IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00612-PAB-MJW

ALEXIS R. ORTIZ,

Plaintiff(s),

v.

JAMES FALK, Warden, Sterling Correctional Facility,
BEVERLY DOWIS, Health Services Administrator, Sterling Correctional Facility,
JO ANN STOCK, Physicians Assistant, Sterling Correctional Facility,
LT. HOFFMAN, Housing Lieutenant, Sterling Correctional Facility, and
MAURICE FAUVEL, DR.,
in their individual and official capacities,

Defendant(s).

---

## RECOMMENDATION ON
## (1) MOTION TO DISMISS FILED BY DEFENDANTS JAMES FALK, LIEUTENANT HOFFMAN, AND JOANN STOCK (Docket No. 41); (2) MOTION TO DISMISS FILED BY DEFENDANT BEVERLY DOWIS (Docket No. 65); and (3) PLAINTIFF'S MOTION TO ADD DEFENDANTS (Docket No. 87)

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was referred to this court pursuant to an Order Referring Case issued

by Judge Philip A. Brimmer on July 3, 2013. (Docket No. 18).

Now before the court for a report and recommendation are two motions to

dismiss (Docket Nos. 41 and 65) and plaintiff's motion to add defendants (Docket No.

87) which was just filed this week on January 21, 2014. Plaintiff filed what has been

construed by the court as responses to the two motions to dismiss. (Docket Nos. 59

and 67). The court has considered all of these motion papers and applicable Federal

Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of

2

the court file.  The court now being fully informed makes the following findings,

conclusions of law, and recommendations on the pending motions.

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the Amended Prisoner Complaint (Docket No. 11),

brought pursuant to 42 U.S.C. § 1983, by the pro se incarcerated plaintiff, Alexis R.

Oritz.  Plaintiff raises six claims for relief based on alleged deliberate indifference to his

serious medical needs--one claim against each of the six named defendants.  In his

response to one of the pending motions to dismiss, however, plaintiff states that he

wishes to drop Falk (who is named in Claim Four) as one of the defendants.  (See

Docket No. 59 at 4, ¶ 4).  In addition, all claims against defendant Fortunato, in both his

official and individual capacities, which are contained in Claim Two, have been

dismissed pursuant to Fed. R. civ. P. 4(m) and D.C.COLO.LCivR 41.1.  (Docket No.

83).  Therefore, the claims against Falk and Fortunato (Claims Two and Four) will not

be addressed below.

Plaintiff alleges the following in his Amended Complaint (Docket No. 11).  On

October 20, 2010, he slipped and fell in the kitchen at Sterling Correctional Facility

("SCF"), injuring his back, namely, suffering three herniated discs.  He eventually had

an MRI in August 2012 and had surgery (a laminectomy) on January 3, 2013.  His

surgeon said that if plaintiff had received his surgery within the first week of his injury,

he would not have lost function of his left leg and foot, and that since it took so long to

receive the surgery, he would not regain the function of his left leg and foot.  Plaintiff still

suffers from the loss of function of his left leg and foot, severe pain in his back, leg, and

foot, and mental anguish because he is in a maximum security surrounding as a

"crippled handicap, And if something was to happen I now can not defend myself in this viscous environment."  (Docket No. 11 at 5).

Claim One - Jo-Ann Stock.  Defendant Jo-Ann Stock refused proper medical treatment when she denied plaintiff an MRI based on her opinion that plaintiff was untruthful about his injuries and was faking.  She had a part in making plaintiff suffer in extreme physical and mental anguish by taking away plaintiff's medication and prolonging the process of receiving an MRI.  She was also "unprofessional" when she stated "racial prejudice comments in her report that is in [plaintiff's] medical file, by saying [he] was an obese Hispanic that has no injury what so ever [sic]."  (Docket No. 11 at 4).

Claim Three - Lt. Hoffman.  Defendant Lieutenant Hoffman denied a prescribed order from Dr. Fauvel to restrict plaintiff to the bottom tier and to a bottom bunk. Instead, Hoffman kept plaintiff on the third tier and forced plaintiff with threats of a write-up for disobeying a lawful order if plaintiff did not move to a top bunk.  Plaintiff fell off of the top bunk numerous times because of the loss of function in his left leg and foot.  In addition, he fell up and down the stairs numerous times.  All of this caused other injuries and mental anguish.

Claim Five - Maurice Fauvel.[1]  Defendant Dr. Fauvel is currently denying proper access to medical needs.  Plaintiff has put in numerous medical "kites" that are going unanswered.  Plaintiff states in these kites that he is still in extreme pain and suffering, his pain medication has been discontinued, and he has not been called for a physical

---

[1]Defendant Fauvel waived service just last month on December 10, 2013 (Docket No. 78), and his answer is not due until February 10, 2014.

4

therapy appointment, which was supposed to be after-care for his recovery following surgery.

Claim Six - Beverly Dowis.  Defendant Director of Medical Staff and SCF Health Service Administrator Beverly Dowis knew of and declined plaintiff's requests for the MRI, refused to schedule an appointment or allow plaintiff access to a specialist or a doctor qualified to treat plaintiff, and denied his grievances at steps 1 and 2, which prolonged plaintiff's access to proper medical care, namely, the back surgery which was put off for over two years, causing serious pain and mental anguish, loss of muscle tissue, and loss of function in his left leg and foot.  Through plaintiff's formal requests for medical care (via "kites") and grievances, Dowis knew of plaintiff's medical conditions and complaints of severe pain which had gone unsuccessfully treated for over two years.  From October 2010 to January 2013 plaintiff sent dozens of desperate kites to her and other medical providers describing his condition as "torture" and repeatedly begging for staff to schedule him for a follow-up with his doctors and Banner Health to address his ongoing pain and limited mobility in his left leg and foot.  His post-August 2012 kites described his inability to receive an appointment with clinical staff and the expiration of his pain medication.  In one kite plaintiff wrote that he was having severe burning pain and numbness in his leg and foot, saying "I need help."  Dowis knew that in September 2012 a group of specialists at Banner Health recommended that plaintiff be scheduled for an urgent procedure intended to alleviate his loss of mobility and treat his injury and severe pain.  Dowis was aware of the delay that took place in scheduling plaintiff's surgery and could have intervened to ensure plaintiff was transported for the procedure, but did not until January 2013.  Dowis never acted to alter the policies so

that plaintiff could avoid years of unnecessary pain, from October 2010 to January 2013. She failed in her "gate-keeper role as health services Administrator." (Docket No. 11 at 8).

Plaintiff seeks declaratory, injunctive, and monetary relief, including punitive damages.

## DEFENDANTS' MOTIONS TO DISMISS

Defendants Hoffman, Stock, and Dowis seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) to the extent plaintiff is suing them in their official capacities, they are immune from damages; (2) plaintiff's claims against Dowis that accrued prior to March 8, 2011, and his claim against Stock are time-barred; (3) plaintiff fails to state an Eighth Amendment claim against Hoffman or Dowis; (4) plaintiff's claim fails to allege adequately the requisite personal involvement of Dowis; and (5) defendants are entitled to qualified immunity.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.

First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is

liable."  Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

Official Capacity.  Defendants correctly assert that to the extent the plaintiff is suing them in their official capacity for damages, they are entitled to immunity pursuant to the Eleventh Amendment.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's claims against the defendants are against them in their official capacities for monetary damages, and also for declaratory relief, see Garcia v. Chamjock, 2012 WL 638145, at *1 (D. Colo. Feb. 27, 2012), such relief is barred by the Eleventh Amendment, and any such claims should be dismissed with prejudice.

Statute of Limitations.  Defendant Stock asserts that the plaintiff's claim against

9

her is time-barred, as does defendant Dowis with respect to claims against her that accrued prior to March 8, 2011.  Plaintiff's § 1983 claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.  See Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law, rather than state law, determines when a federal claim accrues.  The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.  See Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).  Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates on its face that the statute of limitations has expired.  See Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Here, the original Complaint was dated March 6, 2013 (Docket No. 1 at 13),[2] yet plaintiff's first claim concerns his treatment by defendant Stock well more than two years earlier following plaintiff's alleged slip and fall on October 20, 2010, at which time he allegedly suffered a severe back injury.  Stock thus asserts that the plaintiffs claim against her is untimely.  This court agrees.  In addition, the court finds that plaintiff's claims against defendant Dowis that accrued prior to March 6, 2011, are also untimely. The court notes that in his response plaintiff contends that he "did not find out what [his] injuries where [sic] in till [sic] [he] received the MRI two years after [he] slipped and fell."

_____

[2]Plaintiff's original Complaint was filed on March 8, 2013, but under the prison mailbox rule, the pleading should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court.  See Houston v. Lack, 487 U.S. 266 (1988).

10

(Docket No. 59 at 3).  Plaintiff appears to be raising a "discovery rule" which has been

applied when a plaintiff could not through reasonable diligence have discovered the

nature of the injury immediately.  See Cannon v. United States, 338 F.3d 1183, 1190

(10th Cir. 2003).  This court finds, however, that this is not a case where plaintiff could

not immediately know of the injury and its cause.  Plaintiff knew he had been injured in

the slip and fall on October 20, 2010.  Therefore, there is no latent discovery here.  "A

plaintiff need not know the full extent of his injuries before the statute of limitations

begins to run."  Industrial Constructors Corp., 15 F.3d at 969.  Furthermore, plaintiff has

not established any factual basis for tolling the statute of limitations.  Therefore, it is

recommended that the plaintiff's § 1983 claims against Dowis that accrued prior to

March 6, 2011, and all of his § 1983 claims against Stock be dismissed with prejudice

as time barred.  Based upon this recommendation, the court will not address Stock's

other grounds for dismissal.

Eighth Amendment Claim.  Defendants Hoffman and Dowis assert that the

plaintiff's Eighth Amendment claim fails to state a claim upon which relief can be

granted.

With regard to the claims against Dowis, "prisoners have an Eighth Amendment

right to adequate medical care . . . ."  Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th

Cir. 2001).  "In keeping with the principle that government officials are generally

afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases

where prisoners allege that inadequate or delayed medical care violated their Eighth

Amendment rights, it has been established that '[p]rison officials violate the Eighth

Amendment [only] when they are deliberately indifferent to the serious medical needs of

11

prisoners in their custody.'"  Id.  "[T]he Constitution is only implicated in situations in

which prison officials act purposefully to impose unnecessary pain on an inmate;

'inadvertent' denials of care or negligent diagnosis or treatment does not rise to the level

of an 8th Amendment violation."  Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at

*16 (D. Colo. Mar. 10, 2011).  To plead an Eighth Amendment claim of deliberate

indifference to medical needs, "an inmate must allege: (i) that he suffered from a serious

medical need–that is, one that has been diagnosed by a medical provider as requiring

treatment or one which even a lay person would easily recognize as requiring medical

attention; and (ii) the Defendant was subjectively aware of that need and that failing to

treat it would pose an excessive risk to the inmate's health or safety, but nevertheless

elected to delay or deny treatment for it."  Id.  "The subjective component requires an

examination into the defendant's actual state of mind.  To satisfy this element, the

inmate must plead facts that show that the defendant both 'actually knew of' and

'deliberately disregarded' the fact that the inmate was suffering from a serous medical

need."  Id.

Furthermore, "[i]ndividual liability under § 1983 must be based on personal

involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416,

1423 (10th Cir. 1997).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009).  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a

supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

In this case, defendant Dowis asserts that plaintiff has failed to allege adequately the requisite personal participation.  She contends that plaintiff demonstrates through his Complaint that he is suing her only because of her supervisory role within the CDOC, as the Health Service Administrator.  Dowis notes that according to plaintiff, he sent her numerous kites and grievances.  In particular, plaintiff notes that Dowis denied his Step 1 and 2 grievances requesting an MRI.  Dowis asserts that such claims do not establish personal participation.  It is true, as asserted by Dowis, that the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged

13

by plaintiff, does not establish personal participation under § 1983." <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009).  The Tenth Circuit, however, does not "rule out the possibility of liability where the officer denying a grievance has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it," but such allegations require "plausible factual specification." <u>Arocho v. Nafziger</u>, 367 Fed. Appx. 942, 954, 955 (10th Cir. 2010).  Here, plaintiff's pleading sets out plausible factual specification sufficient to survive Dowis's motion to dismiss.  Plaintiff has alleged more involvement by Dowis than just actions such as those of a Step 3 Grievance Officer whose only involvement is during the grievance process.  Dowis, as SCF Health Service Administrator and Director of Medical Staff, allegedly had the authority and ability to approve the medical care plaintiff sought not only in his grievances, but in numerous kites, yet allegedly was deliberately indifferent to plaintiff's serious medical needs of which she had personal knowledge.

Two types of conduct are recognized as constituting deliberate indifference with regard to a prisoner's medical care.  "First, a medical professional may fail to treat a serious medical condition properly. . . .  The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1211 (10th Cir. 2000).  "A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005)

14

(quoting Sealock, 218 F.3d at 1211).  Here, plaintiff asserts that Dowis failed in her role

as gatekeeper and was deliberately indifferent to his serious medical needs.  The court

finds that read liberally, plaintiff's allegations concerning Dowis plead "enough facts to

state a claim to relief [as against her] that is plausible on its face," so as to withstand a

motion to dismiss pursuant to Rule 12(b)(6).  Bell Atlantic Corp., 550 U.S. at 570.

Defendant Hoffman asserts that plaintiff's allegations that he refused to place

plaintiff in a bottom bunk despite a doctor's orders do not demonstrate that Hoffman

made the decision with knowledge of a substantial risk that plaintiff would suffer the

specific harm alleged in this lawsuit.  He contends that plaintiff has not alleged that

Hoffman knew plaintiff was substantially at risk of falling from the top bunk, nor has

plaintiff provided any facts that would render such allegation plausible.  For example,

Hoffman asserts that plaintiff does not allege that he had fallen before, that his condition

or medications increased his likelihood of falling, or that Hoffman had any other reason

to know a fall was likely.  Hoffman thus contents that because plaintiff's allegations do

not demonstrate that Hoffman disregarded excessive risk to plaintiff's health, his claim

fails.

This court finds that the plaintiff has, at least at this stage of the litigation,

sufficiently stated an Eighth Amendment claim against Hoffman so as to withstand the

motion to dismiss.  "A prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511

U.S. 825, 828 (1994); see Helling v. McKinney, 509 U.S. 25, 33 (1993) ("The Eighth

Amendment, as we have said, requires that inmates be furnished with the basic human

needs, one of which is 'reasonable safety.'").  Deliberate indifference requires the

15

defendant to know of and disregard an excessive risk to a prisoner's health or safety.

See Verdecia v. Adams, 327 F.3d 1171, 1175-76 (10th cir. 2003).  Here, plaintiff alleges

he had a doctor's prescribed order to be on the bottom tier and bottom bunk, yet

Hoffman denied it, resulting in plaintiff being injured.  As Judge Brimmer recently found,

"a prison official who disregards without justification the instructions of a medical

professional regarding the care and treatment of an inmate, thereby subjecting the

inmate to an excessive risk of serious harm, may be liable under the Eighth

Amendment."  Doty v. City and County of Broomfield, 2013 WL 5510646, at *8 (D. Colo.

Oct. 4, 2013).  See Cardona v. Cook, 2014 WL 119436, at *3 (D. Utah Jan. 13, 2014)

("[T]here may be instances where assigning an inmate to a top bunk may be a violation

of the Eighth Amendment.").

   Qualified Immunity.  Defendants assert that to the extent they are sued in their

individual capacities, they are entitled to qualified immunity.  "The doctrine of qualified

immunity protects government officials 'from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231

(2009).  It "balances two important interests - the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably."

Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that,

even if constitutionally deficient, reasonably misapprehends the law governing the

circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

"Because the focus is on whether the officer had fair notice that [his] conduct was

16

unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. at 236.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional."  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Id. (quotations omitted).  To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted)

Here, defendants contend that plaintiff meets neither prong of the qualified

immunity analysis.  First, they assert that plaintiff has failed to demonstrate a violation of

a constitutional right, but this court found above that plaintiff has, at least at this stage,

stated a claim against defendants Dowis and Hoffman.  Next, defendants assert in a

very conclusory manner that assuming *arguendo* that plaintiff demonstrated a violation

of his constitutional rights, they are nevertheless entitled to qualified immunity because

their actions did not violate clearly-established law.  Defendants have not supported

their argument with any case law.

This court finds that based on existing case law at the time of the alleged events,

defendants would have been on reasonable notice that their alleged acts could violated

the Eighth Amendment.  See Doty v. City and County of Broomfield, 2013 WL 5510646,

at *8 (D. Colo. Oct. 4, 2013) ("existing case law in the spring of 2010 would have put a

reasonable officer on notice that disregarding the instructions of the intake nurse

delegated the responsibility of performing medical assessments in such a way as to

expose an inmate to an excessive risk of substantial harm could violate the Eighth

Amendment.") (citing Twyman v. Crisp, 584 F.2d 352, 354-55 (10th Cir. 1978); and

Martinez v. Garden, 430 F.3d 1302, 1305 (10th Cir. 2005)); Mata v. Saiz, 427 F.3d 745,

751 (10th Cir. 2005) ("A prison medical professional who serves 'solely . . . as a

gatekeeper for other medical personnel capable of treating the condition' may be held

liable under the deliberate indifference standard if she 'delays or refuses to fulfill that

gatekeeper role.'").

Therefore, it is recommended that the Eighth Amendment claims against

defendants Dowis and Hoffman in their individual capacities not be dismissed at this

time.

18

**PLAINTIFF'S MOTION TO AMEND**

This week plaintiff moved to add two new defendants, Physicians Health Provider "("PHP"), the insurance company he claims denied the orders for the MRI, steroid shots, and appointments for outside experts, and Step 3 Grievance Officer Anthony A. DeCesaro for denying plaintiff's Step 3 Grievance.

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).  A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).

Here, with regard to proposed defendant PHP, '[t]he established principles of municipal liability have been found to apply to § 1983 claims brought against private corporations like [proposed] Defendant PHP."  Rhodes v. Physician Health Partners (PHP), 2010 WL 728213, at *5 (D. Colo. Feb. 24, 2010).  "Therefore, according to the principles of municipal liability, a private actor such as PHP 'cannot be held liable *solely* because it employs a tortfeasor-or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'"  Id. (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978)).  "In order to be held liable for the alleged tortious acts of its agents, Plaintiff must show that PHP directly caused the constitutional violation by

instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations." Id.  In his motion to add defendants (Docket No. 87), plaintiff merely states that he is "adding (PHP) Physicians Health Provider which is the insurance company that I was told by Joseph Fortunato, Trudy Sicotte, and Maurice Fauvel that (PHP) also denied the orders for the MRI's, steroid shots, and appointments for outside experts to evaluate my injuries."  (Docket No. 87 at 1).  Plaintiff has not specified any policy, custom, or practice on the part of PHP that might have caused a violation of his Eighth Amendment rights.  Therefore, plaintiff's proposed claim against PHP would be futile and should not be permitted.  See id.; Martin v. Bruffy, 2007 WL 2936215, at *5 (D. Colo. Oct. 9, 2007) (plaintiff filed to specify any policy, custom, or practice on the part of PHP that might have caused a violation of his Eighth Amendment rights).

This court also finds that plaintiff has not stated a plausible claim against Step 3 Grievance Officer DeCesaro.  As stated above, generally the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).  Here, plaintiff's proposed claim based upon Mr. DeCesaro's mere denial of plaintiff's Step 3 grievance does not allege an "affirmative link" between Mr. DeCessaro and the alleged constitutional violation.  See Arocho v. Nafziger, 367 Fed. Appx. 942, 954, 955 (10th Cir. 2010) (Tenth Circuit does not "rule out the possibility of liability where the officer denying a grievance has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it," but such allegations require "plausible

factual specification."). "The courts require direct, personal participation in the alleged

constitutional violations, and DeCesaro's only alleged involvement here were actions he

took as the step 3 grievance officer . . . In the Tenth Circuit, constitutional allegations

against an actor whose only involvement was during the grievance process do not state

a claim." Swarbrick v. Frantz, 2012 WL 833882, at *8 (D. Colo. Feb. 21, 2012), adopted

by 2012 WL 833868 (D. Colo. Mar. 13, 2012); see Thomas v. Ortiz, 2007 WL 3256708,

at *3 & 4 (D. Colo. Nov. 1, 2007).  Therefore, it is recommended that the plaintiff's

motion to amend the complaint to add a claim against DeCesaro be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Filed by Defendants James Falk,

Lieutenant Hoffman, and Joann Stock (Docket No. 41) be granted in part and denied in

part.  More specifically, it is recommended that the motion be denied with respect to

plaintiff's claim against Hoffman and that the motion be granted in all other respects.  It

is further

**RECOMMENDED** that the Motion to Dismiss Filed by Defendant Beverly Dowis

(Docket No. 65) be granted in part and denied in part.  More specifically, it is

recommended that the motion be granted with respect to the plaintiff's claim for

monetary damages against Dowis in her official capacity and regarding any claims that

accrued prior to March 6, 2011.  It is recommended that the motion be denied in all

other respects.  It is further

**RECOMMENDED** that plaintiff's Motion to Add Defendants (Docket No. 87) be

denied.

21

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  January 24, 2014                    s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                  United States Magistrate Judge