IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00612-PAB-MJW

ALEXIS R. ORTIZ,

Plaintiff(s),

v.

BEVERLY DOWIS, Health Services Administrator, Sterling Correctional Facility, and
LT. HOFFMAN, Housing Lieutenant, Sterling Correctional Facility,

In their individual and official capacities,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 136)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was referred to this court pursuant to an Order Referring Case issued

by Judge Philip A. Brimmer on July 3,  2013.  (Docket No. 18).

## PLAINTIFF'S ALLEGATIONS

The operative pleading is the Amended Prisoner Complaint (Docket No. 11),

brought pursuant to 42 U.S.C. § 1983, by the pro se incarcerated plaintiff, Alexis R.

Oritz.  Plaintiff raised six claims for relief based on alleged deliberate indifference to his

serious medical needs--one claim against each of the six named defendants.  All claims

against defendants Stalk (Claim One), Fortunato (Claim Two), Falk (Claim Four), and

Fauvel (Claim Five) have been dismissed.  (See Docket Nos. 83, 95, 106).  In addition,

the claims for monetary damages against the two remaining defendants, Lieutenant

Hoffman and Beverly Dowis, in their official capacities were dismissed as were and the

2

claims against Dowis (Claim Six) that are predicated on events that occurred before March 8, 2011.  (See Docket No. 95).

Plaintiff alleges the following in his Amended Complaint (Docket No. 11).  On October 20, 2010, he slipped and fell in the kitchen at Sterling Correctional Facility ("SCF"), injuring his back, namely, suffering three herniated discs.  He eventually had an MRI in August 2012 and had surgery (a laminectomy) on January 3, 2013.  His surgeon said that if plaintiff had received his surgery within the first week of his injury, he would not have lost function of his left leg and foot, and that since it took so long to receive the surgery, he would not regain the function of his left leg and foot.  Plaintiff still suffers from the loss of function of his left leg and foot, severe pain in his back, leg, and foot, and mental anguish because he is in a maximum security surrounding as a "crippled handicap, And if something was to happen I now can not defend myself in this viscous environment."  (Docket No. 11 at 5).

Claim Three - Lt. Hoffman.  Defendant Lieutenant Hoffman denied a prescribed order from Dr. Fauvel to restrict plaintiff to the bottom tier and to a bottom bunk. Instead, Hoffman kept plaintiff on the third tier and threatened plaintiff with a write-up for disobeying a lawful order if plaintiff did not move to a top bunk.  Plaintiff fell off of the top bunk numerous times because of the loss of function in his left leg and foot.  In addition, he fell up and down the stairs numerous times.  All of this caused other injuries and mental anguish.

Claim Six - Beverly Dowis.  Defendant Director of Medical Staff and SCF Health Service Administrator Beverly Dowis knew of and declined plaintiff's requests for the MRI, refused to schedule an appointment or allow plaintiff access to a specialist or a

doctor qualified to treat plaintiff, and denied his grievances at steps 1 and 2, which prolonged plaintiff's access to proper medical care, namely, the back surgery which was put off for over two years, causing serious pain and mental anguish, loss of muscle tissue, and loss of function in his left leg and foot.  Through plaintiff's formal requests for medical care (via "kites") and grievances, Dowis knew of plaintiff's medical conditions and complaints of severe pain which had gone unsuccessfully treated for over two years.  From October 2010 to January 2013 plaintiff sent dozens of desperate kites to her and other medical providers describing his condition as "torture" and repeatedly begging for staff to schedule him for a follow-up with his doctors and Banner Health to address his ongoing pain and limited mobility in his left leg and foot.  His post-August 2012 kites described his inability to receive an appointment with clinical staff and the expiration of his pain medication.  In one kite plaintiff wrote that he was having severe burning pain and numbness in his leg and foot, saying "I need help."  Dowis knew that in September 2012 a group of specialists at Banner Health recommended that plaintiff be scheduled for an urgent procedure intended to alleviate his loss of mobility and treat his injury and severe pain.  Dowis was aware of the delay that took place in scheduling plaintiff's surgery and could have intervened to ensure plaintiff was transported for the procedure, but she did not do so until January 2013.  Dowis never acted to alter the policies so that plaintiff could avoid years of unnecessary pain, from October 2010 to January 2013.  She failed in her "gate-keeper role as health services Administrator." (Docket No. 11 at 8).

Plaintiff seeks declaratory, injunctive, and monetary relief, including punitive damages.

4

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now before the court for a report and recommendation is the defendants' Motion for Summary Judgment (Docket No. 136) and supporting exhibits.   Defendants seek summary judgment on the following grounds:  (1) plaintiff fails to show the requisite personal participation on the part of defendant Dowis, and (2) plaintiff's Eighth Amendment claim against the defendants fail.  Plaintiff filed a Motion Affidavit/Declaration in Opposition Disputing Defendant's [sic] Motion for Summary Judgment Requesting Summary Judgment Be Denied in Whole (Docket No. 142).  The court has carefully considered the motion (Docket No. 136) and the Response (Docket No. 142) as well as applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed, makes the following findings, conclusions, and recommendation that the motion be granted.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ."

6

Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle

that government officials are generally afforded wide latitude when fulfilling their

discretionary functions, . . . however, in cases where prisoners allege that inadequate or

delayed medical care violated their Eighth Amendment rights, it has been established

that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately

indifferent to the serious medical needs of prisoners in their custody.'"  Id.  "[T]he

Constitution is only implicated in situations in which prison officials act purposefully to

impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent

diagnosis or treatment does not rise to the level of an 8th Amendment violation."  Ajaj v.

Federal Bureau of Prisons, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011).  Such a

claim has an objective and a subjective component.  Sealock v. Colorado, 218 F.3d

1205, 1209 (10th Cir. 2000).  Under the subjective component, a plaintiff must prove that

his alleged deprivation was "sufficiently serious."  Id.  "A medical need is sufficiently

serious if it is one that has been diagnosed by a physician as mandating treatment or

one that is so obvious that even a lay person would easily recognize the necessity for a

doctor's attention."  Id. (internal quotation marks omitted).  "To satisfy the subjective

component, a plaintiff must demonstrate that the defendant-the specific prison

official–was aware of and ignored an excessive risk to the inmate's health or safety."

Adams v. Jones, 577 Fed. Appx. 778, 780 (10th Cir. Aug. 25, 2014).

**Dowis.**  Defendants assert that plaintiff has failed to show the requisite personal

participation on the part of Dowis and that plaintiff demonstrates through his Complaint

that he is suing Dowis only because of her supervisory role within the CDOC, as the

Health Service Administrator.  Defendants note that according to plaintiff, he sent

numerous grievances and kites to Dowis and other medical providers, but defendants assert the evidentiary record demonstrates that plaintiff has received continuous and consistent treatment for his medical needs as it relates to his complaints of back and leg pain.

The court has reviewed the uncontroverted medical records and finds that while plaintiff attempts to hold Dowis, as Health Services Administrator, liable for any perceived delay in his medical treatment, the medical records here demonstrate that plaintiff sent in numerous kites requesting medical attention, those kites were provided to medical staff, and plaintiff was seen continuously and consistently by medical providers for treatment relating to his back and leg pain.  Furthermore, there is nothing in those records which show any personal involvement by Dowis in any deliberate indifference to any serious medical needs with respect to plaintiff's back and legs.  In plaintiff's Affidavit/Response, plaintiff repeatedly collectively refers to what "Dowis **and her staff**" (emphasis added) did or did not do.  He does not provide any evidence with respect to actions or inactions specifically by Dowis.  He merely makes bald claims that "being a trained professional in the medical field," Dowis "was aware of the signs in Plaintiff's requests, and diagnossiss [sic] that is in the Plaintiffs [sic] medical records numerous times" yet "refused the plaintiff access to urgent medical care for plaintiff serious spinal injury."  (Docket No. 142 at 4).  Plaintiff, however, has not come forward with evidence that establishes a genuine issue of material fact as to Dowis's knowledge that the treatment regiment established by plaintiff's providers exposed plaintiff to excessive health risks.  See Kneen v. Zavaras, 2012 WL 5493854, at *11 (D. Colo. Nov.

13, 2012).  Furthermore, as noted by defendants, the medical records show that after

just recently been seen by an outside orthopedist who recommended surgery, plaintiff

was then seen in the medical department on January 15, 2013.  (Docket No. 136-1 at

20). The orthopedist had recommended surgery, which was approved by CHP, and the

surgery (L 4 laminectomy with decompression L3-4-5) was done only two weeks later at

Sterling Medical Center on January 30, 2013 (Docket No. 136-2 at 1).

Furthermore, while plaintiff points to a doctor's statement in the record that

plaintiff "will not get this back," there is nothing in the record to support plaintiff's

statement that "[a]ccording to Dr. Darrel T. Fenton and his expert opinion plaintiff is

permanently disabled because Defendant Dowis and her staff deliberately failed to

schedule the plaintiff in a timely manner for desprately [sic] need surgery."  (Docket No.

142 at 5).  There simply has been no showing, other than plaintiff's conclusory

allegations, that any delay in having certain tests or surgery resulted in substantial

harm.  See id. (quoting Oxendine, 241 F.3d at 1276).

Finally, the court notes that a difference of opinion between an inmate and the

medical staff as to the proper diagnosis or treatment of a condition is insufficient to

establish a constitutional violation.  See Callahan v. Poppell, 471 F.3d 1155, 1160 (10th

Cir. 2006).

Based upon the findings above, this court concludes that plaintiff has not raised a

triable issue of fact concerning Dowis's violation of plaintiff's constitutional rights.  It is

thus recommended that summary judgment be granted as to Dowis.

**Hoffman.**  This court previously found that the plaintiff had sufficiently stated an

Eighth Amendment claim against Hoffman so as to withstand a motion to dismiss.  (See

9

Docket Nos. 89 and 95).   Now, however, at this later stage in the litigation, the court

recommends that summary judgment enter for Hoffman.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to

an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828

(1994); see Helling v. McKinney, 509 U.S. 25, 33 (1993) ("The Eighth Amendment, as

we have said, requires that inmates be furnished with the basic human needs, one of

which is 'reasonable safety.'").  Deliberate indifference requires the defendant to

actually know of and disregard an excessive risk to a prisoner's health or safety.  See

Verdecia v. Adams, 327 F.3d 1171, 1175-76 (10th Cir. 2003).

Here, plaintiff alleges he had a doctor's prescribed order to be on the bottom tier

and bottom bunk, yet Hoffman denied it, resulting in plaintiff being injured.  However,

Hoffman states the following in an affidavit submitted in support of defendants' motion

for summary judgment.  While he cannot remember the exact time frame, he does recall

that he had plaintiff moved from a lower bunk to a top so that Hoffman could

accommodate the housing of another offender who had a lower bunk restriction.

Hoffman's standard practice is to check housing restrictions/accommodations prior to

assigning an offender to a particular cell and bed.  If a dispute arises, he calls the

medical department to make sure that a housing restriction/accommodation has not just

been entered.  During his interaction with plaintiff, he recalls that plaintiff did not want to

be moved to the top bunk and wanted a bottom tier/bottom bunk housing restriction.

Hoffman thus looked up plaintiff's housing restrictions/accommodations on the computer

and told plaintiff he did not currently have a bottom tier/bottom bunk restriction.  Plaintiff

insisted he did have a bottom tier/bottom bunk restriction, and Hoffman then called the

medical department and was advised that plaintiff did not currently have a medical housing restriction for a bottom tier/bottom bunk restriction.  Through further investigation, Hoffman found that the last time plaintiff had a top bunk at the Sterling Correction Facility was on August 2, 2012.  He was moved to a lower bunk on November 4, 2012, and was finally issued a bottom tier/bottom bunk housing restriction on December 5, 2014.  (Docket No. 136-3).

In response, plaintiff states that on July 2, 2012, he was provided a cane for walking, and Dr. Fauvel stated to plaintiff that now with the cane, plaintiff would be bottom tier/bottom bunk restricted.  Plaintiff further states that DOC's procedures and policies state an offender with a cane cannot be on upper tiers and bunks, but he was moved to the top bunk on July 15, 2012, thirteen days after the cane was issued.  He claims Hoffman knows that an offender with a cane cannot be on upper tiers and top bunks.  Therefore, he asserts Hoffman refused to follow the Doctor's prescribed order, violating plaintiff's Eighth and Fourteenth Amendment rights.  (Docket No. 142 at 8-9).

"[A] prison official who disregards without justification the instructions of a medical professional regarding the care and treatment of an inmate, thereby subjecting the inmate to an excessive risk of serious harm, may be liable under the Eighth Amendment."  Doty v. City and County of Broomfield, 2013 WL 5510646, at *8 (D. Colo. Oct. 4, 2013).  See Cardona v. Cook, 2014 WL 119436, at *3 (D. Utah Jan. 13, 2014) ("[T]here may be instances where assigning an inmate to a top bunk may be a violation of the Eighth Amendment.").  Plaintiff, however, has provided no evidence which controverts Hoffman's statement that there was no order in the system for a bottom bunk.  Plaintiff has made no evidentiary showing that there was, in fact, a medical order

for a bottom bunk or that there was a policy that if an inmate has a cane, there is also a restriction for a bottom bunk.  Plaintiff's assertion in his Affidavit/Response concerning Dr. Fauvel's statement regarding such a restriction is hearsay, which cannot be considered on summary judgment.  See Johnson v. Weld County, Colo., 594 F.3d 1202, 1210 (10th Cir. 2010).  Furthermore, based on Hoffman's uncontroverted statements concerning the actions he took to confirm whether plaintiff had a lower bunk restriction before moving him to the upper bunk, plaintiff has failed to meet the subjective component - there has been no showing that Hoffman was aware of and ignored an excessive risk to the inmate's health or safety.  Therefore, summary judgment should enter for Hoffman.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that defendants' Motion for Summary Judgment (Docket No. 136) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

12

**Makin v. Colorado Dep't of Corrections,** 183 F.3d 1205, 1210 (10th Cir. 1999); **Talley**

**v. Hesse,** 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  December 8, 2014                    s/ Michael J. Watanabe
      Denver, Colorado                    Michael J. Watanabe
                                  United States Magistrate Judge